MARY'S OPINION HEADING 








        NO. 12-10-00162-CR

 

IN
THE COURT OF APPEALS 

 

TWELFTH COURT OF
APPEALS DISTRICT

 

TYLER,
TEXAS

GERALD TREMAINE
MCWILLIAMS,     §                      APPEAL FROM THE 411TH

APPELLANT

 

V.                                                                    §                      JUDICIAL
DISTRICT COURT OF

 

THE
STATE OF TEXAS,

APPELLEE                                                   §                      TRINITY
COUNTY, TEXAS

                                                                                                                                                          


MEMORANDUM
OPINION

Gerald
Tremaine McWilliams appeals his jury conviction for unlawful possession of a
firearm by a felon.  In five issues, Appellant contends that the trial court
improperly denied his motion to suppress, the trial court erred when it omitted
allegedly relevant jury instructions, and that the evidence was legally
insufficient to support his conviction.  We affirm.

 

Background

            The
record before us shows that Appellant had been convicted of robbery on January
30, 1998, and was imprisoned until December 14, 2005, when he was released. As a
convicted felon, he could not possess a firearm for five years following the
date of his release.[1]  

The
evidence at trial showed that on June 9, 2009, Appellant was arrested by law
enforcement in Trinity County based upon a warrant issued by the State’s parole
board stating that he had violated the terms of his release.  Trinity County
law enforcement had been monitoring Appellant for the previous six months based
upon complaints by neighbors and others of his involvement with trafficking in
illegal narcotics at the home of Deanna McDonald.  At the time of his arrest,
about a mile from McDonald’s leased home, he had been following her in a
separate vehicle.  McDonald continued on to her home after Appellant had been
stopped.

            While
the arrest of Appellant was proceeding, McDonald retrieved items from her home
and took them to a dumpster in the subdivision, about two hundred yards away
from her home.  Officers made contact with McDonald and drove her back to her
home.  There, they asked her if they could search the home and she gave
permission.  In the search of her home and in the bedroom that she shared with
McWilliams, the officers found a Mossberg shotgun in the corner of the room on
the side of the bed where McWilliams slept.  They also found a .380 Hi-Point
pistol under the mattress.  McDonald expressed surprise at the discovery of
these two firearms and uttered an expletive when the officers told her about
finding them.  She explained that she was a felon on parole and that this
discovery could send her back to the penitentiary.  She did explain to the
officers that these were not her weapons and that they belonged to McWilliams. 
McDonald was then taken into custody by the officers, but the record before us does
not show whether she was actually charged with violation of her parole.

            Appellant
was indicted, and a jury convicted him of the unlawful possession of a firearm
by a felon before the fifth anniversary of his release from confinement.  He was
sentenced to ten years of imprisonment, and this appeal followed.

 

Motion to Suppress

            In
his first issue, Appellant contends that the trial court erred in failing to
grant his motion to suppress the warrantless search of the McDonald home. 
Appellant contends that McDonald did not voluntarily give her consent to allow
her residence to be searched.

Standard
of Review

            In
reviewing a motion to suppress, we view all of the evidence in the light most
favorable to the trial court’s ruling.  State v. Johnston, 336
S.W3d 649, 657 (Tex. Crim. App. 2011).  We apply a bifurcated standard of
review in which we review de novo a trial court’s application of law to the
facts, but we will defer to the trial court on determinations of credibility
and historical fact.  Hubert v. State, 312 S.W.3d 554, 559 (Tex.
Crim. App. 2010).  

            Because
issues of consent are necessarily fact intensive, a trial court’s finding of
voluntariness must be accepted on appeal unless it is clearly erroneous.  Meekins
v. State, 340 S.W.3d 454, 460 (Tex. Crim. App. 2011).  Likewise, a
finding of voluntariness is afforded the same great deference, because “the
party that prevailed in the trial court is afforded the strongest legitimate
view of the evidence and all reasonable inferences that may be drawn from that
evidence.”  Id. (quoting Gutierrez v. State,
221 S.W.3d 680, 687 (Tex. Crim. App. 2007)).  When there are no written
findings explaining the factual basis for the trial court’s decision, we imply
findings of fact that support his ruling so long as the evidence supports those
implied findings.  Id.

Applicable
Law

            It
is well settled under the Fourth and Fourteenth Amendments of the United States
Constitution that a search conducted without a warrant issued upon probable
cause is “per se unreasonable . . . subject to only a few specifically
established and well lineated exceptions.”  Schneckloth v. Bustamonte,
412 U.S. 218, 219, 93 S. Ct. 2041, 2043, 36 L. Ed. 2d 854 (1973).  It is
equally well settled that one of the specifically established exceptions to the
requirements of both a warrant and probable cause is a search that is conducted
pursuant to consent.  Id.  The validity of consent to search is a
question of fact to be determined from all of the circumstances.  Meekins,
340 S.W.3d at 458.  The Fourth and Fourteenth Amendments require that consent
not be coerced by explicit or implicit means, or by implied threat or covert
force, and voluntariness of a person’s consent is also a question of fact.  Id.
at 458-59.  The trial court must conduct a careful sifting and balancing of the
unique facts and circumstances of each case in deciding whether a particular
consent search was voluntary or coerced.  Id. at 459; see also
Valtierra v. State, 310 S.W.3d 442, 448 (Tex. Crim. App. 2010) (“The
validity of an alleged consent to search is a question of fact to be determined
from the totality of the circumstances”).

            By
looking at the circumstances leading up to the search, the reaction of the consenting
person to pressure, and any other factor deemed relevant, a trial court can
determine whether the statement of consent was given voluntarily.  Reasor
v. State, 12 S.W.3d 813, 818 (Tex. Crim. App. 2000).  Factors that can be
taken into consideration are the consenting person’s youth, education, and
intelligence; the constitutional advice given to the person; the length of the
detention; and the repetitiveness of the questioning. Id. 
Additional factors the court should consider in determining whether consent to
search was free from coercion include any use of physical mistreatment,
violence, threats, threats of violence, promises or inducements, deception or
trickery, and the physical condition and capacity of the person consenting to
the search within the totality of the circumstances.  Meekins, 340
S.W.3d at 460 n.26.  Under Texas law, the state must prove voluntary consent by
clear and convincing evidence.  Valtierra, 310 S.W.3d at 448.

Discussion

            The
primary investigating officer on the scene, Woody Wallace, Precinct One Constable
of Trinity County, Texas, testified that McDonald’s house had been under
surveillance for at least six months due to the complaints of neighbors and
others that narcotics trafficking was occurring at the home.  He testified that
he and other officers investigating at the home knew McDonald.  He testified
that he asked McDonald for permission to search her house and that she gave
verbal consent more than once.  He also testified that she opened the door and
let the officers into the house, and that she sat on the porch during the
search.  

            Constable
Wallace testified that other officers initially made contact with McDonald at
the housing subdivision’s dumpster site, which was located about two hundred
yards away from her home.  Constable Wallace and the other officers testified
that McDonald had been placed in the back of a law enforcement patrol car in
order to transport her from the dumpster to her home where she gave consent to
have it searched.

            Paul
Shipper, narcotics investigator with the Trinity County Sheriff’s Department,
testified that when he arrived on the scene, McDonald was in the back seat of a
patrol car.  He testified that when Constable Wallace asked her for permission
to search the home, her response was “yes, you can search it.”  He said that he
himself asked her in order to reconfirm that they had permission to enter her
home, and she told him “yes, sir.”  On cross examination, Shipper was asked if
McDonald was in handcuffs when they first saw her in the back of the patrol
car.  He answered that he could not recall whether she had been or not.

            W.R.
Hope, a precinct one deputy constable in Trinity County, testified that he was there
when Constable Wallace asked McDonald for permission to search the home.  He
said that she had given her permission while she stood next to her home.  He
specifically was asked if she was in handcuffs before she gave her consent to
have her home searched, and he said that she was not.  Constable Wallace had
been asked if McDonald had been handcuffed.  His testimony was that she was
handcuffed only after she was placed under arrest when the guns were actually
found in her home.  

The
trial court’s task is to determine precisely what was said and then what was
conveyed by the totality of the circumstances.  Meekins, 340
S.W.3d at 462.  Appellant contends that the evidence showed McDonald had been
handcuffed as she was driven in the patrol car from the dumpster to her home. 
He contends this shows her consent to allow her home to be searched was not
voluntary.  See Flores v. State, 172 S.W.3d 742, 750-52 (Tex.
App–Houston [14th Dist.] 2005, no pet.).

            However,
a review of the testimony from the suppression hearing contradicts Appellant’s contention. 
Counsel did not specifically ask Constable Wallace whether Appellant had been
handcuffed while she was in the patrol car.  Rather, Constable Wallace stated only
that McDonald had been handcuffed after her arrest following the discovery of
firearms in her home.  Investigator Shipper testified that he could not
remember whether she was handcuffed in the patrol car on the way from the dumpster
to her home.  Deputy Constable Hope specifically testified that she had not
been handcuffed while she was being driven back from the dumpster to her home. 
No evidence before the trial court established that she was handcuffed prior to
giving permission for the officers to search her home.  The evidence in this
record is therefore distinguishable from Flores.  See id.

            Further,
we note that more than one time, McDonald verbally agreed to allow her home to
be searched.  She opened the door to let the officers into her home.  The
testimony from the officers indicated that McDonald was shocked and uttered an
expletive when the officers told her they had found guns in her bedroom.  In
viewing all the evidence within the totality of the circumstances and in the
light most favorable to the trial court’s ruling, we cannot conclude that the
trial court abused its discretion in finding that McDonald voluntarily
consented to the search of her home.  

Appellant’s
first issue is overruled.

 

Article 38.23(a) Instruction

            In
his second issue, Appellant contends that the trial court erred in denying his
request to submit a jury instruction under Article 38.23(a) of the Texas Code
of Criminal Procedure regarding whether McDonald’s consent was voluntary. 
Appellant contends that the issue was raised during the guilt/innocence portion
of his trial and therefore was a fact issue that should have been submitted to
the jury.  

Standard
of Review and Applicable Law

Article
38.23(a) provides as follows:

 

No evidence obtained by an officer
or other person in violation of any provisions of the Constitution or laws of
the State of Texas, or the Constitution or laws of the United States of
America, shall be admitted in evidence against the accused on the trial of any
criminal case.

In any case where the legal
evidence raises an issue hereunder, the jury shall be instructed that if it
believes, or has a reasonable doubt, that the evidence was obtained in
violation of the provisions of this Article, then and in such event, the jury
shall disregard any such evidence so obtained.

 

 

Tex. Code Crim. Proc. Ann.
art. 38.23(a) (Vernon 2005). An Article 38.23(a) jury instruction must be given
in any case in which the defense raises a factual dispute about the legality of
how the evidence was obtained.  Pickens v. State, 165 S.W.3d 675,
680 (Tex. Crim. App. 2005). 

            However,
a defendant’s right to the submission of a jury instruction under Article
38.23(a) is limited to disputed issues of fact that are material to his claim
of a constitutional or statutory violation that would render evidence
inadmissible.  Madden v. State, 242 S.W.3d 504, 509-10 (Tex.
Crim. App. 2007); see also Tex.
Code Crim. Proc. Ann. art. 38.23(a) (Vernon 2005).  There must be a
genuine dispute concerning a material fact.  Madden, 242 S.W.3d
at 510.  If there is no disputed factual issue, the legality of the conduct is
determined by the trial court alone, as a question of law.  Id.

Discussion

Appellant
contends that during the guilt/innocence phase of the trial, McDonald raised the
issue of whether she had been asked by the officers if they could search her
home.  We disagree.  We have carefully reviewed the record, which reveals that McDonald
was questioned at three separate times about whether she had been asked by the
officers to give her consent to the search.  Each time either her response was found
to be nonresponsive by the court or she did not answer the question.  Three law
enforcement officers testified that she had given consent after being asked whether
the officers could search her home.  Because McDonald failed to answer the
questions about whether she had been asked for her consent to have her home searched,
there was no evidence before the trial court that would make this a fact issue.
Consequently, the trial court was not required to submit a jury instruction on voluntary
consent.  See id. 

Appellant’s
second issue is overruled.

Accomplice Witness Instruction

            In
his third issue, Appellant contends that the trial court should have submitted an
instruction to the jury regarding accomplice witness testimony.  

Standard
of Review

We
review the trial court’s decision to deny a request for an accomplice witness
instruction under an abuse of discretion standard.  See Paredes v. State,
129 S.W.3d 530, 538 (Tex. Crim. App. 2004).  A trial court abuses its
discretion when its ruling is outside the zone of reasonable disagreement.  Young
v. State, 283 S.W.3d 854, 874 (Tex. Crim. App. 2009) (per curiam).  If
the appellate court determines the trial court erred regarding the jury charge,
it must then evaluate the harm caused by the error.  See Almanza v. State,
686 S.W.2d 157, 171 (Tex. Crim. App. 1984).  If there was no objection in the
trial court and the alleged error is raised for the first time on appeal, the
appellant must show egregious harm to obtain relief.  Id.

Egregious
harm occurs where an error affects the very basis of a case, deprives the defendant
of a valuable right, or vitally affects a defensive theory.  Allen v.
State, 253 S.W.3d 260, 264 (Tex. Crim. App. 2008).  This is a difficult
standard to prove, and it must be determined on a case-by-case basis.  Ellison
v. State, 86 S.W.3d 226, 227 (Tex. Crim. App. 2002).  The “actual
degree of harm must be assayed in light of the entire jury charge, the state of
the evidence, including the contested issues and weight of probative evidence,
the argument of counsel, and any other relevant information revealed by the
record of the trial as a whole.”  Almanza, 686 S.W.2d at 171.

“[N]on-accomplice
evidence can render harmless a failure to submit an accomplice witness
instruction by fulfilling the purpose an accomplice witness instruction is
designed to serve.”  Herron v. State, 86 S.W.3d 621, 632 (Tex.
Crim. App. 2002).  More specifically, the court of criminal appeals explained
the purpose of the rule in its relation to the relevant harm analysis as
follows:

 

The instruction does
not say that the jury should be skeptical of accomplice witness testimony.  Nor
does it provide for the jury to give less weight to such testimony than to
other evidence.  The instruction merely informs the jury that it cannot use the
accomplice witness testimony unless there is also some non-accomplice evidence
connecting the defendant to the offense.  Once it is determined that such
non-accomplice evidence exists, the purpose of the instruction is fulfilled,
and the instruction plays no further role in the factfinder’s decision-making.  Therefore,
non-accomplice evidence can render harmless a failure to submit an accomplice
witness instruction by fulfilling the purpose an accomplice witness instruction
is designed to serve.

 

 

Id.  Finally,
under the egregious harm standard, the omission of an accomplice witness
instruction is generally harmless unless the corroborating nonaccomplice
evidence is “so unconvincing in fact as to render the State’s overall case for
conviction clearly and significantly less persuasive.”  Id.

Applicable
Law

“A
conviction cannot be had upon the testimony of an accomplice unless
corroborated by other evidence tending to connect the defendant with the
offense committed; and the corroboration is not sufficient if it merely shows
the commission of the offense.”  Tex.
Code Crim. Proc. Ann. art. 38.14 (Vernon 2005).  This rule, commonly
known as the “accomplice witness rule,” creates a statutorily imposed review
that is not derived from federal or state constitutional principles defining
standards for reviewing the sufficiency of the evidence.  Druery v. State,
225 S.W.3d 491, 498 (Tex. Crim. App. 2007).

An
accomplice is someone who participates with a defendant before, during, or
after the commission of the crime and acts with the required culpable mental
state.[2]  Id.  Participation
requires an affirmative act that promotes the commission of the offense with
which the defendant is charged.  Id.  Simply having knowledge of
the offense and not disclosing that information, or even trying to conceal the
information, does not render a witness an accomplice.  Id.  Additionally,
mere presence at a crime scene does not make an individual an accomplice.  Id.
 There must be evidence sufficient to connect the alleged accomplice to the
criminal offense as a “blameworthy participant.”  Cocke v. State,
201 S.W.3d 744, 748 (Tex. Crim. App. 2006).

A
trial court is not required to give an accomplice witness instruction when the
evidence is clear that the witness is neither an accomplice as a matter of law
nor as a matter of fact.  Id.  The evidence determines what jury
instruction, if any, is needed.  Id.  “When the evidence clearly
shows (i.e., there is no doubt) that a witness is an accomplice as a matter of
law, the trial judge must instruct the jury accordingly.”  See Smith v.
State, 332 S.W.3d 425, 439 (Tex. Crim. App. 2011).  “A witness who is
indicted for the same offense or a lesser-included offense as the accused is an
accomplice as a matter of law.”  Id.  “But if the State dismisses
the indictment before the witness testifies, the witness is no longer deemed an
accomplice as a matter of law.”  Id.  On the other hand,
if “the parties present conflicting or unclear evidence as to whether a witness
is an accomplice,” the jury must first determine whether the witness is an
accomplice as a matter of fact under instructions defining the term
“accomplice.”  Paredes, 129 S.W.3d at 536.

Discussion

At
the time of Appellant’s arrest, McDonald was also arrested for possession of
the firearm discovered in the bedroom.  However, the record does not show
whether McDonald was charged with the offense.  Rather, it suggests that
McDonald was not charged or indicted for the offense or any lesser-included
offense.  Without specific evidence in the record, Appellant failed to show
that McDonald was an accomplice as a matter of law.  See Smith,
332 S.W.3d at 439.  Based on our review of the record, Appellant has only shown
that McDonald, who may or may not have been a convicted felon,[3]
was present during the commission of the offense, and perhaps that she helped
conceal information that connected Appellant to the firearms.  

Even
if we were to assume that the evidence raised a fact issue as to whether
McDonald was Appellant’s accomplice, Appellant cannot prevail.  Because
Appellant did not object to the omission of the accomplice instruction at
trial, he must show on appeal that he was egregiously harmed by the omission.  See
Herron, 86 S.W.3d at 632.  Constable Wallace testified that the
surveillance of Appellant over the past six months established that Appellant
lived with McDonald in the home.  He further testified that McDonald’s landlord
confirmed that Appellant was living in the home.  Brandon Bhattaharjee, a
deputy with the Trinity County Sheriff’s Department, testified that Appellant’s
identification card was found in one of the bedroom’s dresser drawers.  He also
identified numerous articles of clothing in the room belonging to Appellant. 
He testified Appellant had been wearing some of the clothing during a recent incident
in which he had fled from a City of Trinity police officer and a Trinity County
deputy constable.  The firearms were located in the bedroom where McDonald and
Appellant slept.  In fact, Deputy Bhattaharjee testified that the .380 Hi-Point
pistol was found under the mattress of the bed where Appellant and McDonald
slept, and that the Mossberg shotgun was located in plain view in the corner of
the room by a nightstand near the bed.  This nonaccomplice testimony
corroborates McDonald’s testimony that Appellant possessed the firearms.  Under
the record before us, we cannot conclude that the corroborating nonaccomplice
evidence is “so unconvincing in fact as to render the State’s overall case for
conviction clearly and significantly less persuasive.”  See id.  Therefore,
even if we were to assume that the evidence raised a fact issue as to whether
McDonald was Appellant’s accomplice, the nonaccomplice testimony renders
harmless the omission of the accomplice witness instruction.  See id.

Appellant’s
third issue is overruled.

 

Sufficiency of the Evidence

            In
his fourth issue, Appellant contends that the evidence was not legally
sufficient to sustain his conviction.[4]  In his fifth
issue, Appellant contends that the trial court erred in denying his motion for
a directed verdict.  A challenge to the trial court’s ruling on a motion for
directed verdict is, in actuality, a challenge to the legal sufficiency of the
evidence to support the conviction.  Williams v. State, 937
S.W.2d 479, 482 (Tex. Crim. App. 1996); Madden v. State, 799
S.W.2d 683, 686 (Tex. Crim. App. 1990).  Therefore, we will consider
Appellant’s fourth and fifth issues together.  

Standard
of Review

In
reviewing the sufficiency of the evidence to support a conviction, we consider
all of the record evidence in the light most favorable to the verdict, and
determine whether, based on that evidence, any rational trier of fact could
have found the defendant guilty of all the essential elements of the offense
beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307,
319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); Villarreal v. State,
286 S.W.3d 321, 327 (Tex. Crim. App. 2009).  This familiar standard gives full
play to the responsibility of the trier of fact to resolve conflicts in the
testimony, to weigh the evidence, and to draw reasonable inferences from the
basic facts to ultimate facts.  Jackson, 443 U.S. at 319, 99 S.
Ct. at 2789.  Every fact does not need to point directly and independently to
the guilt of the appellant, as long as the cumulative force of all the
incriminating circumstances is sufficient to support the conviction.  Hooper
v. State, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).  Circumstantial
evidence is as probative as direct evidence in establishing guilt and may alone
be sufficient to establish guilt.  Id.  The standard of review on
appeal is the same for both direct and circumstantial evidence cases.  Kuciemba
v. State, 310 S.W.3d 460, 462 (Tex. Crim. App. 2010).

Applicable
Law

To
establish unlawful possession of a firearm by a felon, the state must show the
accused was previously convicted of a felony offense and possessed a firearm
after the conviction and before the fifth anniversary of his release from
confinement or from supervision under community supervision, parole, or
mandatory supervision, whichever is later.  Tex.
Penal Code Ann. § 46.04(a)(1) (Vernon 2011).  As to the element of
possession, the State must show the accused knew of the firearm’s existence and
that he exercised actual care, custody, or management over it.  Grantham
v. State, 116 S.W.3d 136, 143 (Tex. App.–Tyler 2003, pet. ref’d).  The
evidence to satisfy these elements may be direct or circumstantial.  Id. 
When the firearm is not found on the accused person or is not in the exclusive
possession of the accused, additional facts must link the accused to the
contraband.  Id.  The purpose of linking the accused to the
firearm is to protect innocent bystanders from conviction based solely on their
fortuitous proximity to the firearm.  Smith v. State, 176 S.W.3d
907, 916 (Tex. App.–Dallas 2005, pet. ref’d) (citing Poindexter v. State,
153 S.W.3d 402, 406 (Tex.Crim.App.2005)). However, the state need not
necessarily prove the defendant had exclusive possession of the firearms; joint
possession can be sufficient to sustain a conviction.  Id.

In
determining whether sufficient links exist, we examine factors such as whether (1)
the firearm was in plain view, (2) the defendant owned the residence where the
firearm was found, (3) he was in close proximity to the firearm and had ready
access to it or whether it was found on his person, (4) he attempted to flee, (5)
his conduct indicated a consciousness of guilt, (6) he had a special connection
to the firearm, (7) the firearm was found in an enclosed space, and (8) he made
incriminating statements.  Id.  It is the “logical
force” of the factors, not the number of factors present, that determines
whether the elements of the offense have been established. Id.


Discussion

Here,
McDonald testified she was Appellant’s common law wife and they lived together
in her house.  She also testified that the two guns belonged to Appellant. 
Appellant, however, contends that McDonald’s testimony cannot be considered
because she was a codefendant, and was therefore an accomplice to his crime.  But
the record in the instant case does not reveal that McDonald was Appellant’s codefendant. 


Even
if it was shown that McDonald was an accomplice, as we have already discussed, the
nonaccomplice testimony corroborates McDonald’s testimony and independently
presents legally sufficient evidence that Appellant possessed the firearms. 
The evidence demonstrates that Appellant and McDonald lived at the residence.
Joint possession of the firearms is legally sufficient evidence to sustain a
conviction.  See Smith, 176 S.W.3d at 916.  The logical force of
the nonaccomplice evidence links Appellant to actual possession of the
firearms.  Constable Wallace testified that his agency and other local law
enforcement agencies conducted surveillance of Appellant over the past six
months and that Appellant lived in the home.  He further testified that the
landlord confirmed that Appellant lived at the residence. Deputy Bhattaharjee
testified that Appellant’s identification card was found in the room where the
guns were located, as well as articles of clothing belonging to Appellant. 
Deputy Bhattaharjee knew Appellant from prior interactions with police.  He
testified that the handgun was found under the mattress where the Appellant and
McDonald slept, and that the shotgun was located in plain view near the bed.  In
conducting their search, the officers also discovered scales used in drug
trafficking with trace amounts of cocaine, as well as small trace amounts of
marijuana. 

Based
on this evidence, viewed in the light most favorable to the verdict, a rational
jury could have concluded that Appellant, a convicted felon, voluntarily
maintained actual possession, custody, or management over the firearms in
violation of Section 46.04(a)(1) of the Texas Penal Code.  Consequently, we
hold the State presented legally sufficient evidence to link Appellant to the
two firearms.  

Appellant’s
fourth and fifth issues are overruled.

 

 

Disposition

            Having
overruled Appellant’s five issues, the judgment of the trial court is affirmed.

                                                                                                James T. Worthen

                                                                                                        
Chief Justice

Opinion delivered August 10, 2011.

Panel
consisted of Worthen, C.J., Griffith, J., and Hoyle, J.

(DO
NOT PUBLISH)









[1] Tex. Penal Code Ann. § 46.04(a)(1) (Vernon 2011).

 





[2] Section 7.02(a) of the Texas
Penal Code provides further clarification regarding one’s criminal
responsibility for the conduct of another.

 

(a) A person is criminally
responsible for an offense committed by the conduct of another if:

(1) acting with the kind of
culpability required for the offense, he causes or aids an innocent or
nonresponsible person to engage in conduct prohibited by the definition of the
offense; 

(2) acting with intent to promote
or assist the commission of the offense, he solicits, encourages, directs,
aids, or attempts to aid the other person to commit the offense; or 

(3) having a legal duty to
prevent commission of the offense and acting with intent to promote or assist
its commission, he fails to make a reasonable effort to prevent commission of
the offense. 

 

Tex. Penal Code Ann. § 7.02(a) (Vernon 2011).

 





[3] Constable Wallace testified that
McDonald stated she was a felon and could not possess a firearm.  But it was
not specifically shown that McDonald was a person that could violate the
criminal statute, and she never admitted during the trial that she was a convicted
felon unable to possess a firearm.  





                [4] Also in his fourth issue,
Appellant claims the evidence was factually insufficient to support the trial
court’s judgment.  We no longer review the factual sufficiency of the
evidence.  See Brooks v. State, 323 S.W.3d 893, 894-95 (Tex.
Crim. App. 2010).